IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNT, GATHER LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-627-RP |
| | § | |
| ALEXIS ANDREASIK, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Alexis Andreasik's ("Andreasik") Motion to Dismiss, or, in the alternative, Transfer Venue. (Mot., Dkt. 23). Plaintiff Hunt, Gather LLC ("HG") filed a response, and Defendant filed a reply, (Dkt. 29). Having reviewed the parties' briefing and the relevant law, the Court finds that the motion should be denied.

## I. BACKGROUND

### A. Overview

This is a breach of contract and tortious interference case involving an Austin-based marketing company, Hunt, Gather LLC, and its former employee, Alexis Andreasik. (Compl., Dkt. 1, at 1). In August 2021, Andreasik began working for HG as the Vice President of Client Services. As part of her onboarding, Andreasik signed a non-disclosure agreement/non-solicitation agreement with HG. (*Id.* at 4–5). As part of her job, Andreasik had regular contact with many of HG's clients and frequently accessed private company information, including client relations, finances, accounting, business plans, and source codes. (*Id.*). Andreasik worked remotely from Illinois, traveling to Austin no more than "15 times" over the course of her employment. (Mot. Dismiss, Dkt. 23, at 15).

In March 2023, HG terminated Andreasik's employment. (*Id.* at 8). The parties offer competing stories for why Andreasik was terminated. HG alleges that Andreasik failed to get along with her coworkers and was terminated for poor performance. (*Id.* at 1–2). But because the complaint focuses on Andreasik's post-termination conduct, it does not provide substantial details on events that led to her firing. Andreasik, meanwhile, alleges that she was the victim of gender and disability discrimination. (Mot. Dismiss, Dkt. 23, at 3). She alleges that HG created a hostile work environment and fired her in retaliation for seeking accommodations and reporting financial misconduct. (*Id.*).

On May 2, 2023, Andreasik filed suit against HG in the U.S. District Court for the Northern District of Illinois, alleging wrongful termination and infliction of emotional distress, among other claims. *See Alexis Andreasik v. Hunt, Gather, LLC et al.* No. 1:23-cv-2755 (N.D. Ill. Filed May 2, 2023) ("*Illinois Lawsuit*"). Almost one month later, HG filed the instant suit, seeking damages and injunctive relief for Andreasik's alleged breach of contract, tortious interference, and computer fraud. (Compl., Dkt. 1, at 20–24). Concurrently with its complaint, HG filed a motion for a temporary restraining order. (Dkt. 3). The Court granted the motion in part as unopposed, (Dkt. 16). HG then moved for expedited discovery in advance of its motion for a preliminary injunction, but Andreasik opposed the motion on the grounds that she would soon be filing a motion to dismiss. (Mot., Dkt. 19; Def.'s Resp., Dkt. 21).

Andreasik filed the instant motion to dismiss on June 14, 2023. (Mot. Dismiss, Dkt. 23). The motion raises several arguments but focuses largely on the idea that this case should be dismissed or transferred in light of the first-filed suit in Illinois. (*Id.*). Andreasik argues that there is substantial overlap between the two suits, that HG's claims in this case should be pled as compulsory counterclaims in the Illinois suit, and, in the alternative, that venue is clearly more convenient in Illinois. (*Id.*). HG opposes the motion, arguing that the two cases have minimal overlap and venue is

more convenient in Texas, where the company's headquarters is located. (Def.'s Resp., Dkt. 28). Therefore, because the nature of the pleadings is relevant to both the substantial overlap and venue analysis, the Court will summarize both complaints in more detail.

**B. Andreasik's Complaint in the Northern District of Illinois**

In her first complaint, Andreasik focuses on the alleged discrimination at HG leading up to her termination. (*Illinois Lawsuit* (Compl., Dkt. 1). She claims that HG's leadership created a toxic work environment at the company, engaging in in mistreatment, harassment, and verbal abuse. (*Id.*). Andreasik alleges that she tried to report the misbehavior, but that only led to further retaliation. (*Id.*). She also reported improper billing practices and says she was removed from leadership responsibilities in retaliation. (*Id.*). At the same time she faced retaliation, her rheumatoid arthritis worsened, and she told HG that she could no longer move to Austin as early as they had initially agreed. (*Id.*). Andreasik began to get treatment for her rheumatoid arthritis, but alleges the company failed to properly accommodate her and instead terminated her employment a month later. (*Id.*). Her complaint asserts eight claims for relief, including (1) gender discrimination in violation of Illinois state law, (2) gender discrimination in violation of Title VII of the federal Civil Rights Act, (3) retaliation for reporting discrimination, (4) disability discrimination in violation of Illinois state law, (5) disability discrimination in violation of the federal Americans with Disabilities Act ("ADA"), (6) retaliatory discharge for reporting improper billing, (7) violation of the Illinois Whistleblower Act, and (8) intentional infliction of emotional distress. (*Id.*).

On June 13, 2023—after this suit began—Andreasik amended her complaint, adding two counts for retaliation under Title VII and the ADA. *Id.* (Am. Compl., Dkt. 14). She newly alleges that HG "further retaliated against her by prematurely terminating her health insurance and filing a baseless claim against her in Texas." *Id.* at 10, 12.

### C. HG's Complaint in This Court

HG's complaint, filed on June 1, 2023 in this Court, focuses much more on events *after* Andreasik's termination. (Compl., Dkt. 1). HG's history of Andreasik's employment does not detail any specific performance issues or reasons why she was fired, but instead focuses on the fact that she signed a non-solicitation agreement and had access to confidential company information as part of her job duties. (*Id.* at 2–7). The complaint alleges that, after her termination, Andreasik refused to return her company laptop, which contained sensitive information. (*Id.* at 8). After ignoring three demands to return the laptop, Andreasik allegedly wiped the device, rendering it inoperable and unable to show whether company information had been transferred to other devices. (*Id.*). It also alleges that Andreasik is now working for Growth Energy, a former client of HG, doing substantially the same work that she performed for the company during her previous employment. (*Id.*). The complaint asserts claims for breach of contract for violating her non-solicitation agreement, tortious interference with contractual relations, violations of the Computer Fraud and Abuse Act, and violations of the Texas Harmful Access by Computer Act. The complaint also seeks injunctive relief, and the Court granted HG's motion for a temporary restraining order in part on June 7, 2023. (Order, Dkt. 16).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143

F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B. Motion to Transfer**

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen AG,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2)

the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative. *In Re: Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause," which entails satisfying the statutory requirements and clearly demonstrating that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

## III. DISCUSSION

### A. Substantial Overlap

A district court may refuse to hear a case "if the issues raised by the cases substantially overlap." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011). "In deciding if a substantial overlap exists," the Fifth Circuit has looked to factors including "whether the core issue was the same or if much of the proof adduced would likely be identical." *Id.* (citing *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir.1971) (cleaned up). "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* (cleaned up). In analyzing these factors, courts should try to

"avoid the waste of duplication," "avoid rulings which may trench upon the authority of sister courts," and "avoid piecemeal resolution of issues that call for a uniform result." *Id.* (citation omitted).

Here, the Court does not believe that the issues are so substantially similar that dismissal or transfer of this suit is warranted. First, the factual overlap of the case is partial, but not substantial. The factual allegations supporting Andreasik's discrimination case relate almost entirely to the period she was employed with HG. She alleges a years-long pattern of discriminatory behavior and a hostile work environment that ultimately ended with her termination. (*Illinois Lawsuit* (Compl., Dkt. 1)). HG's suit, by contrast, deals almost entirely with the events *after* Andreasik's termination. (Compl., Dkt. 1). The complaint does not address Andreasik's behavior during her time as an employee, but focuses exclusively on her retention of company information and behavior after she left the company. (*Id.*).

In general, district courts dealing with employment discrimination claims against trade secrets/breach-of-NDA claims have found that the two are permissive, rather than compulsory, counterclaims. *Spencer v. Banco Real, S.A.*, 623 F. Supp. 1008, 1012 (S.D.N.Y. 1985) (holding that counterclaims for conversion, trespass, unfair competition, breach of fiduciary duty and tortious interference with business contracts were not compulsory counterclaims to plaintiff's employment discrimination claim simply because there was some factual overlap); *Stewart v. Lamar Advert. of Penn LLC*, No. CIV.A. 03-2690, 2004 WL 90078, at *2 (E.D. Pa. Jan. 14, 2004) ("The mere fact that state law counterclaims arise from the same employment relationship as the original claims over which the court has subject matter jurisdiction is insufficient to render the counterclaims compulsory."); *Zambrano v. Chic Marine of Lauderdale, Inc.*, No. 00–7632, 2001 WL 36178001, at *3 (S.D. Fla. June 5, 2001) (dismissing trade secret counterclaim arising from same employment relationship as plaintiff's FLSA claim).

One employment discrimination case is particularly helpful. In *Adamson v. Dataco Derex, Inc.*, 178 F.R.D. 562 (D. Kan. 1998), the district court dismissed counterclaims for trade-secrets violations because the two sets of claims did not share a common nucleus of operative facts. The district court in *Adamson* noted that the claims and counterclaims were not sufficiently related because (1) a judgment on the employee's discrimination claim would not bar the employer's trade secrets claim, (2) the employer did not terminate the employee for any reason related to the trade secrets claim, and (3) the claims are based on different legal theories and operative facts. *Id.* at 564–65. Here, each of those three factors are present. Even if Andreasik prevails on her employment discrimination claim, it would not affect whether she breached her non-solicitation agreement or violated the state computer fraud act. Nor does HG allege that it began to suspect any such violations before Andreasik was fired. Instead, it notes that she was terminated for poor performance and complaints the company had received. (Compl., Dkt. 1, at 1–2). Finally, the legal theories are different, and Texas law regarding HG's claims has virtually no relationship with the federal and Illinois state discrimination laws relied upon by Andreasik in her suit.

Given this disparity of the relevant facts between the two suits, there is little reason to believe that the evidence will substantially overlap. HG's lawsuit will deal predominantly with the disclosure of company information after she was terminated. Beyond Andreasik herself, key witnesses are likely to be HG's experts, employees at Growth Energy, and forensic experts who can analyze Andreasik's laptop and other potential devices. In the discrimination suit, key witnesses beyond Andreasik are likely to be her coworkers and HG's leadership. In short, beyond Andreasik's own testimony, there is little reason to think that the witnesses will overlap.

Material evidence is also likely to be different between the two cases. Performance data during her employment will not be relevant to the breach of contract, tortious interference, or computer fraud claims, nor will Andreasik's treatment of company data after her termination be

relevant to HG's subjective motions for the firing. Andreasik notes that the "computer misuse and spoliation" claims will be relevant to both the Texas and Illinois suits. (Mot. Dismiss, Dkt. 23, at 11). To the extent the laptop had information that might pertain to employment discrimination that HG no longer possesses, this is true. But if spoliation did support consolidation, then that would only effectively reward a party for the alleged destruction of evidence. If a party intentionally destroys evidence with relevance to two cases, they should not then be able to cite the spoliation as a reason to consolidate the cases in their preferred forum.

In short, the overlap between the two cases is minimal. Andreasik's complaint deals almost entirely with pre-termination facts, while HG's complaint focuses on conduct post-termination. While there may be some facts and evidence relevant to both suits, it is insufficient to justify dismissal of this case.

Finally, Andreasik's amendments to her Illinois complaint do not change the outcome of this analysis. After this suit was filed, Andreasik amended her discrimination complaint to add two claims for retaliation under the ADA and Title VII. (*Illinois Lawsuit* (Am. Compl., Dkt. 14)). Andreasik argues that her new retaliation claims help create overlap because this lawsuit is part of that retaliation. (Mot. Dismiss, Dkt. 23, at 11). But transfer under the first-to-file rule is discretionary. *Int'l Fid. Ins. Co.*, 665 F.3d at 677 ("The first-to-file rule is a discretionary doctrine . . . ."). Here, the timing of the amendment counsels against consolidation. While the retaliation claim may be related to this case, it was only filed after HG brought suit, suggesting that it was added at least in part to create overlap.[1] Moreover, HG's claims are set to be partially resolved in its motion for a preliminary injunction, which will presumably determine the initial question of whether its claims were brought in bad faith. Finally, the inquiries are still different, because HG's subjective motivation for filing

[1] To hold otherwise would risk allowing every discrimination plaintiff to force unrelated counterclaims into their preferred forum by adding amendments claiming that the unrelated claims are retaliatory.

suit—a key element of retaliation—does not impact the merits of this lawsuit. Resolution of the retaliation claim will not resolve HG's claims in this case.

**B. Compulsory Counterclaims**

Andreasik also argues that HG's claims should be dismissed as "compulsory counterclaims" in the Illinois lawsuit, although this inquiry is more exacting than the "substantial overlap" test. (Mot. Dismiss, Dkt. 23, at 8–9). A compulsory counterclaim is one that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A counterclaim may be compulsory when "(1) the issues of fact and law raised by the claim and counterclaim largely are the same; (2) res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; or (4) there is [a] logical relationship between the claim and the counterclaim." *Park Club, Inc. v. Resolution Tr. Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992) (cleaned up). "A logical relationship exists when the counterclaim arises from the same aggregate of operative facts." *RPV, Ltd. as Trustee for Village Tr. v. Netsphere, Inc.*, 771 Fed. Appx. 532, 535 (5th Cir. 2019) (internal quotation and citation omitted). The test "is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979).

For the same reason that there is no substantial overlap, the claims do not arise from the same transaction or occurrence. A wrongful firing is not the same occurrence as wrongfully retaining company information or breaching a non-solicitation agreement. No elements of the claims overlap. While a wrongful firing may lead to a former employee's retention of company information, that does not mean the claims arise under the same occurrence. While both claims involve Andreasik's employment with HG, the existence of that employment contract does not mean that all claims

related to the contract are part of the same occurrence. *See Healy v. Pavarini Constr. Co. (SE), Inc.*, No. 06-20663-CIV, 2006 WL 8433546, at *1 (S.D. Fla. July 20, 2006) (collecting cases on employer's counterclaims to termination suits). Nor do Andreasik's newly pled retaliation claims render HG's claims compulsory in this Illinois case, because those were added after HG's claims were pending in this Court. *See* Fed. R. Civ. P. 13(a)(2)(A).

Andreasik argues that *Cohan v. Acme Lift Co. LLC*, No. CV 20-11075 (CCC), 2021 WL 1625098 (D.N.J. Apr. 27, 2021) shows that breach of contract claims are compulsory counterclaims when they follow employment discrimination claims, and the parties dedicate much of their briefing to the issue. (Mot. Dismiss, Dkt. 23, at 10–12; Pl.'s Resp., Dkt. 28, at 9–10; Def.'s Reply, Dkt. 29, at 6 n.4). In that case, Defendant Acme Lift Company was sued for age discrimination and retaliation. Acme argued that the plaintiff had signed a release upon his termination and sued its former employee for beaching that severance agreement and NDA. The Court found that Acme's counterclaims were compulsory because they were "part of the same litigation bundle" as the employment discrimination claims and that one claim could not be resolved without determining the other. *Id.* at *4. But *Cohan* is distinguishable because both claims in that case revolved around the ex-employee's severance clause and whether that termination agreement had been breached. *Id.* Here, there is no severance agreement at issue, nor any suggestion that Andreasik violated a release agreement with HG. Unlike *Cohan*, it is readily possible to address the employment discrimination claim without affecting the breach of contract/non-solicitation claim, and vice versa. There is no inextricable nexus between the two parties' claims, only a factual similarity. In total, the Court finds no persuasive weight for the general proposition that breach of contract/non-solicitation allegations must be brought as counterclaims to employment discrimination claims. Therefore, the Court declines to dismiss HG's complaint on those grounds.

**C. Transfer**

In the alternative, Andreasik argues that the Court should transfer the claims to the Northern District of Illinois, presumably for consolidation with her pending case there. (Mot. Dismiss, Dkt. 23, at 12). As a threshold matter, venue is proper in both districts. "The preliminary question under 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. In other words, a movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *2 (W.D. Tex. Aug. 26, 2022). Here, Andreasik does not contest that she is subject to personal jurisdiction in Texas, nor does HG dispute in the pleadings that it is subject to personal jurisdiction in Illinois. Venue is appropriate in either district.

In support of transfer, Andreasik misquotes a U.S. Supreme Court case for the proposition that when "a defendant filed a §1404(a) motion, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." (Mot. Dismiss, Dkt. 23, at 13 (citing *Atl. Marine.*, 571 U.S.)). This is not what the cited opinion says. *Atl. Marine*, 571 U.S at 581. Instead, *Atlantic Marine* says that *"[when] the parties have agreed to a valid forum-selection clause*, a district court should ordinarily transfer the case" to the preferred forum. *Id.* (emphasis added). The parties here have not signed a forum selection clause, so the *Atlantic Marine* holding is entirely inapplicable. In fact, for a standard §1404 transfer motion, the opposite is true, and the moving party bears the burden of showing why the transferee forum is clearly more convenient. *Volkswagen II,* 545 F.3d at 315. In the Court's view, this misleading and disingenuous argument in itself merits dismissal of Andreasik's argument.

Nonetheless, turning to the *Volkswagen* transfer analysis, Andreasik has not met her burden that venue is clearly more convenient in Illinois. Weighing the relevant factors, venue is either equal

or slightly more convenient in Texas. HG's sources of proof will be at its headquarters in Austin, while Andreasik's proof will be in Illinois. However, HG is likely to have more relevant sources of information, including the laptop in question, the confidential trade secrets, and company data. The factor slightly weighs against transfer. Second, the availability of compulsory processes are the same in both districts, and neither party focuses on unwilling witnesses as a factor. Third, the willing witnesses' cost of attendance is neutral. HG's employees, executives, and many of its clients are located in Texas, as is the forensic expert regarding spoliation, while Andreasik is located in Illinois. (Pl.'s Resp., Dkt. 28, at 19). The remaining witnesses appear to reside in neither Illinois nor Texas. (*Id.*; Mot. Dismiss, Dkt. 28, at 14); *but see Carr v. Ensco Offshore Co.*, No. CIV A G-06-629, 2007 WL 760367 (S.D. Tex. Mar. 8, 2007) ("Generally, the Court gives very little consideration to the convenience of witnesses who are still employed by Defendant."). The parties each reside in their preferred forum, and the other key witnesses reside in neither, again rendering the prong neutral. Andreasik argues that consideration of practical problems weighs slightly in favor of transfer, because her lawsuit already exists in the Northern District of Illinois. And she is correct that there may be some convenience in having both actions proceed in the same district. But as the Court has already discussed, the cases do not substantially overlap, and few (if any) non-party witnesses will be the same. Moreover, this Court is already familiar with the merits of HG's allegations from consideration of its TRO. Overall, this factor is either neutral or slightly in favor of transfer.

Turning to the public factors, they weigh in favor of keeping the case in Texas. The median disposition time between the two districts is not significantly different—the Western District of Texas has a median time of 8.4 months while the Northern District of Illinois has a median of 7.2 months. *See* U.S. District Court – Judicial Caseload Profile, available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf. This Court has a faster trial disposition time, however, rendering the factor effectively neutral. More decisively, the

local interest favors keeping the case in Texas, as this is a suit involving an Austin company, an employee who knowingly contracted to work with the Austin company, and alleged damage to that company's business in Austin. This factor strongly favors keeping the case in Texas. Third, Texas is more familiar with the applicable law. HG alleges various claims under Texas state law, including breach of contract, tortious interference, and violations of the Texas Harmful Access by Computer Act. (Compl., Dkt. 1). While the parties may litigate choice of law questions at a later stage, there is no reason, at this juncture, to believe that Texas law would not apply for claims related to a non-solicitation signed by a Texas company. The fourth factor regarding foreign law is irrelevant. Overall, the factors are essentially neutral. While the Northern District of Illinois has a related suit and a less congested docket, the availability of evidence slightly favors Texas, while the familiarity with the governing law more strongly favors this state. Therefore, because the factors largely cancel out, the Northern District of Illinois is not "clearly more convenient." Accordingly, the Court will decline to transfer the case.

## IV. CONCLUSION

For the reasons stated above, Andreasik's motion to dismiss, or in the alternative, transfer (Dkt. 23), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall meaningfully confer on HG's motion for expedited discovery and submit, if possible, a joint and agreed scheduling order for expedited. discovery and HG's motion for a preliminary injunction on or before **July 7, 2023**.

**SIGNED** on June 28, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE