IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNT, GATHER LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-627-RP |
| | § | |
| ALEXIS ANDREASIK, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Alexis Andreasik's ("Andreasik") Motion for Reconsideration on this Court's order denying Andreasik's motion to dismiss, or in the alternative, certify the ruling for interlocutory appeal. (Mot. Reconsider, Dkt. 33; Order, Dkt. 30). Having considered the motion and the responsive filings, (Dkts. 40, 41), the Court finds that the motion should be denied in full.

## I. BACKGROUND

This is a breach of contract and tortious interference case involving an Austin-based marketing company, Hunt, Gather LLC ("HG"), and its former employee, Alexis Andreasik. (Compl., Dkt. 1, at 1). In August 2021, Andreasik began working for HG as the Vice President of Client Services. As part of her onboarding, Andreasik signed a non-disclosure agreement/non-solicitation agreement with HG. (*Id.* at 4–5). As part of her job, Andreasik had regular contact with many of HG's clients and frequently accessed private company information, including client relations, finances, accounting, business plans, and source codes. (*Id.*). Andreasik worked remotely from Illinois, traveling to Austin no more than "15 times" over the course of her employment. (Mot. Dismiss, Dkt. 23, at 15).

In March 2023, HG terminated Andreasik's employment. (*Id.* at 8). The parties offer competing stories for why Andreasik was terminated. HG alleges that Andreasik failed to get along

with her coworkers and was terminated for poor performance. (*Id.* at 1–2). But because the complaint focuses on Andreasik's post-termination conduct, it does not provide substantial details on events that led to her firing. Andreasik, meanwhile, alleges that she was the victim of gender and disability discrimination. (Mot. Dismiss, Dkt. 23, at 3). She alleges that HG created a hostile work environment and fired her in retaliation for seeking accommodations and reporting financial misconduct. (*Id.*).

On May 2, 2023, Andreasik filed suit against HG in the U.S. District Court for the Northern District of Illinois, alleging wrongful termination and infliction of emotional distress, among other claims. *See Alexis Andreasik v. Hunt, Gather, LLC et al.*, No. 1:23-cv-2755 (N.D. Ill. filed May 2, 2023) ("the *Illinois Lawsuit*"). Almost one month later, HG filed the instant suit, seeking damages and injunctive relief for Andreasik's alleged breach of contract, tortious interference, and computer fraud. (Compl., Dkt. 1, at 20–24).

On June 14, 2023, Andreasik filed a motion to dismiss, or, in the alternative, transfer to the Northern District of Illinois. (Mot., Dkt. 23). The core of Andreasik's argument was that HG's claims in this suit are so highly related to the Illinois lawsuit that they should have been brought as compulsory counterclaims in that case. (*Id.*). HG opposed the motion, arguing that Andreasik's post-employment actions had minimal overlap, if any, with her employment termination claims, and that the two cases could continue to proceed separately. (Pl.'s Resp., Dkt. 28). In the alternative, Andreasik moved to transfer the case under 28 U.S.C. § 1404. (Mot., Dkt. 23, at 12). HG also opposed transfer, noting that Andreasik had not met her burden of showing that Illinois was a clearly more convenient forum. (Pl.'s Resp., Dkt. 28). The Court agreed with HG and denied the motion to dismiss or transfer on June 28, 2023. (Order, Dkt. 30).

On July 6, Andreasik moved for reconsideration of the Court's order. (Mot. Reconsider, Dkt. 33). In her motion, Andreasik argues that the Court improperly used the "substantial overlap"

test rather than the "logical relationship" test when determining whether HG's claims were related to the Illinois lawsuit. (*Id.* at 3). Andreasik argues that there is a logical nexus between the two cases, and therefore, HG's claims should be dismissed or re-filed in Illinois. (*Id.*). Andreasik further argues that the Court erred by deciding the motion under Rule 12(b)(1), when she raised her arguments under Rule 12(b)(3) and 12(b)(6). (*Id.* at 7–8). Finally, Andreasik argues that the Court improperly weighed the transfer factors and discounted the convenience of allowing one court to oversee both actions. (*Id.* at 6–7). In the alternative, Andreasik requests that the Court certify its ruling for interlocutory appeal.

HG opposes the motion for reconsideration. (Pl.'s Resp., Dkt. 40). HG argues that the motion for reconsideration seeks to re-litigate issues that this Court already decided. (*Id.* at 1). HG emphasizes that there is no logical relationship between the two suits, and no compelling circumstances that warrant transfer to Illinois. (*Id.* at 4–6). Moreover, HG notes that Andreasik is mistaken about the use of Rule 12 to dismiss compulsory counterclaims. (*Id.* at 4). Finally, HG opposes the request to certify the ruling for interlocutory appeal, noting that there are contested factual issues and that the Court's order comports with well-settled precedent from district courts across the country. (*Id.* at 7–10).

## II. LEGAL STANDARD

### A. Motion for Reconsideration

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). American Title asserts its motion under Rule 54(b). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

### B. Certification of Rulings for Interlocutory Appeal

28 U.S.C. § 1292(b) permits a district judge to, in certain circumstances, certify an issue for interlocutory appeal. The statute reads in part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Thus, the movant must convince the Court that its order involved (1) a controlling question of law, (2) that there is substantial ground for difference of opinion about the question of law, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. "Interlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed." *Mae v. Hurst*, 613 Fed. Appx. 314, 318 (5th Cir. 2015) (quoting *Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997)). "The purpose of § 1292(b) is to provide for an interlocutory appeal in those exceptional cases" in which the statutory criteria are met. *United States v.*

*Garner*, 749 F.2d 281, 286 (5th Cir. 1985); *accord Clark–Dietz & Associates–Engineers, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional."). Further, "[t]he decision to certify an interlocutory appeal pursuant to section 1292(b) is within the discretion of the trial court and unappealable." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1167 (5th. Cir. 1987) (*vacated on other grounds by Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 1033 (1989)); *see Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress . . . chose to confer on district courts first line discretion to allow interlocutory appeals."); *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 405 n.9 (2004) (Ginsburg, J., dissenting) ("[T]he decision whether to allow an [interlocutory] appeal lies in the first instance in the District Court's sound discretion.").

### III. DISCUSSION

#### A. Motion for Reconsideration

##### 1. Order on Motion to Dismiss

Andreasik raises several arguments in her motion for reconsideration. First, Andreasik argues that the Court did not apply the correct "logical relationship" test when analyzing whether HG's complaint was a compulsory counterclaim. (Mot. Reconsider, Dkt. 33, at 3). Andreasik alleges that the Court mistakenly applied the "substantial overlap" test rather than examine the possibility of a compulsory counterclaim due to a logical relationship. (*Id.*).

This argument appears to ignore an entire subsection of the Court's order dedicated to the logical relationship test. The Court used both the substantial overlap test *and* the logical relationship test. (Order, Dkt. 30, at 6–11). Section III.B is explicitly titled "Compulsory Counterclaims" and examines whether there is a logical relationship between the two cases. (*Id.* at 10). As the Court noted, district courts across the country have consistently rejected the notion that post-employment actions such as trade secret misappropriation or breach of non-solicits are compulsory counterclaims to employment discrimination suits. (*Id.* at 7 (citing cases)); *Healy v. Pavarini Constr. Co. (SE), Inc.*, No.

06-20663-CIV, 2006 WL 8433546, at *1 (S.D. Fla. July 20, 2006) (collecting cases holding same); *Adamson v. Dataco Derex, Inc.*, 178 F.R.D. 562 (D. Kan. 1998) (explaining in depth why trade secrets claims were permissive counterclaims to an employment discrimination claim). Nothing in Andreasik's motion for reconsideration demonstrates that the Court's reliance on this extensive body of caselaw was erroneous. (Mot. Reconsider, Dkt. 33, at 2–5).  Nor does Andreasik cite any new caselaw suggesting otherwise. (*Id.*). Instead, Andreasik seeks reconsideration effectively based on a technicality—that reorganizing sections of the Court's order might lead to a different result. (*Id.*). But whether under the logical relationship or substantial overlap test, the Court finds no reason this action must be consolidated with the Illinois lawsuit.

Andreasik further argues in her reply brief that the two actions are logically related because a finding of wrongful termination in the Illinois suit could void the non-compete at issue in this case. (Def.'s Reply, Dkt. 41, at 5). While this argument is more convincing, it is also waived.[1] Andreasik did not bring up any potential constructive discharge in her motion to dismiss, nor her motion for reconsideration. Andreasik had three opportunities to raise this argument: the motion to dismiss, the reply brief in support, and the motion for reconsideration. Instead, Andreasik waited until the fourth brief on the matter to make this argument. Therefore, the constructive discharge argument has been waived. *See Jones v. Cain*, 600 F.3d 527 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018) ("[W]e generally do not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court."); *Austin*, 864 F.3d at 336 (citing *Saint Annes Dev. Co. v. Trabich*,

---

[1] Moreover, this argument applies only to HG's claim for breach of contract. Constructive discharge would not void HG's remaining counts, including computer fraud, tortious interference, and spoliation. (Compl., Dkt. 1).

443 Fed. Appx. 829, 831–32 (4th Cir. 2011) (noting that the district court's decision to consider new arguments upon a Rule 54 motion is discretionary)).[2]

Finally, Andreasik argues that the Court incorrectly analyzed her motion under Rule 12(b)(1) when she brought it under Rules 12(b)(3) and 12(b)(6). (Mot. Reconsider, Dkt. 33, at 7–8). Because Andreasik explicitly stated, "The issue is jurisdictional, and thus is the Court's duty to determine," the Court analyzed her motion under Rule 12(b)(1). (Mot. Dismiss, Dkt. 23, at 8).[3] Stated simply, Andreasik cannot characterize the issue as one of subject-matter jurisdiction and then complain that the Court analyzed her motion under 12(b)(1).[4] But regardless of whether a motion is made under Rule 12(b)(1), (3), or (6), the test falls under the same Rule 13 standard. That is because the determination of permissive vs. compulsory counterclaims falls under Rule 13, and the mechanism used to dismiss or transfer counterclaims does not affect the merits of that Rule 13 analysis. *See, e.g.*, *Cohan v. Acme Lift Co. L.L.C.*, CV 20-11075 (CCC), 2021 WL 1625098, at *4 (D.N.J. Apr. 27, 2021) (analyzing compulsory counterclaims as part of a motion to transfer); *Healy*, 2006 WL 8433546, at *1 (analyzing compulsory counterclaims under Rule 12(b)(1)); *SDMS, Inc. et al., v. Rocky Mountain Chocolate Factory*, No. 08 CV 0833 JM (AJB), 2008 WL 4838557, at *2 (S.D. Cal. Nov. 6, 2008) (noting that a court may use Rule 12(b)(6) to dismiss compulsory counterclaims not filed in the

---

[2] In a similar vein, Andreasik argues that HG's claims are logically related to her retaliation claims in Illinois. (Mot. Reconsider, Dkt. 33, at 5–6). As the Court stated in its previous order, those retaliation claims cannot render HG's claims compulsory because Andreasik added claims for retaliation *after* HG's lawsuit. (Order, Dkt. 30, at 9); Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that—*at the time of its service*—the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .") (emphasis added). HG served its complaint on Andreasik prior to her amended complaint in Illinois, so under the plain reading of Rule 13, those amendments have no bearing on the compulsory counterclaim analysis.
[3] Andreasik labeled the issue "jurisdictional" two more times in her motion. (Mot. Dismiss, Dkt. 23, at 18 ("[T]his Court should stay discovery until it has made its jurisdictional determinations."); *id.* at 19 ("The interests of justice . . . require reasoned analysis of this Motion and its threshold jurisdictional questions . . . .").
[4] Andreasik labels the Court's 12(b)(1) consideration "sua sponte"—seeming not to realize that her motion to dismiss explicitly and repeatedly characterized itself as jurisdictional. (Mot. Reconsider, Dkt. 33, at 7–8).

original suit). Regardless of the 12(b) motion used, HG's claims do not meet the test for compulsory counterclaims under Rule 13.

### 2. Order on Motion to Transfer

Andreasik next moves for reconsideration on the Court's denial of its motion to transfer in the alternative. (Mot. Reconsider, Dkt. 33, at 6). Here especially, Andreasik does not raise any new arguments or point out why the Court's initial decision was wrong. (*Id.* at 6–7). The Court has already weighed the factors that Andreasik discusses in her motion for reconsideration and found that they do not clearly show a more convenient venue in Illinois. Ultimately, a motion to transfer under Section 1404 involves an eight-factor balancing test, and simply emphasizing different factors does not warrant reconsideration of the Court's order. Andreasik notes that her action is already pending in Illinois, but the Court has previously considered this factor and found it insufficient to warrant transfer. (Order, Dkt. 30, at 13; Mot. Reconsider, Dkt. 33, at 7). Andreasik's argument largely rehashes what the Court has already rejected and will be denied accordingly.

At any rate, the Court independently denied Andreasik's motion to transfer on the alternative basis that she misled the Court. On two separate occasions, Andreasik's counsel quoted Supreme Court precedent to say the precise opposite of what the Supreme Court had actually held. (Order, Dkt. 30, at 12). As a sanction for the misleading citation, the Court denied the motion to transfer. (*Id.* ("[T]his misleading and disingenuous argument in itself merits dismissal of Andreasik's argument.")). In their motion for reconsideration, Andreasik's counsel does not even acknowledge the error, and therefore provides no basis for the Court to revisit its sanction.

### B. Certification of Ruling for Interlocutory Appeal

In determining whether to certify a ruling for interlocutory appeal, courts examine whether there is (1) a controlling question of law, (2) substantial ground for difference of opinion about the

question of law, and (3) whether an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

As to the controlling question of law, courts examine the ruling's potential to have some impact on the course of the litigation. *Id.* at 723. At one end of the continuum, courts have found issues to be controlling "if reversal of the district court's opinion would result in dismissal of the action." *Strougo v. Scudder, Stevens & Clark, Inc.*, No. 96 CIV. 2136(RWS), 1997 WL 473566, at *7 (S.D.N.Y. Aug.18, 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)) (other citations omitted). An issue of law has also been termed controlling where "the certified issue has precedential value for a large number of cases." *Id.* On the other hand, an issue is not seen as controlling if its resolution on appeal "would have little or no effect on subsequent proceedings." John C. Nagel, Note, *Replacing the Crazy Quilt of Interlocutory Appeals Jurisprudence with Discretionary Review*, 44 Duke L.J. 200, 212 (1994). Put simply, even though Andreasik moves to dismiss HG's claims, the practical effect would be to change venue. Even if the Court granted Andreasik's 12(b)(3) or 12(b)(6) motion, HG could simply refile its claims in the Northern District of Illinois. Indeed, Andreasik's motions argue that HG must do exactly that. The effect of the Court's decision would not be dismissal of HG's claims, but a transfer to Illinois. A case's venue is not a controlling question of law. *See Garner v. Wolfinbarger*, 433 F.2d 117, 120 (5th Cir. 1970) ("The Congressional policy against piecemeal appeals, as expressed in the final judgment rule, 28 U.S.C. § 1291, to which § 1292(b) is a narrow exception, is eroded by permitting review of exercise of the judge's discretion under § 1404(a) as a 'controlling question of law.'"). Therefore, for largely the same reasons that convenience transfers are reviewable only on petitions for writs of mandamus, rather than § 1292(b) appeals, the Court will not certify its ruling for interlocutory appeal. *See id.*

Beyond the controlling nature of the decision, courts typically look to whether there is a question of law, not fact. *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (citing

*Ahrenholz v. Bd. of Trustees of U. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)). Here, the question turns on both law and fact, and a reviewing court would likely need to examine the factual allegations of HG's complaint, Andreasik's discrimination allegations in Illinois, and the factual allegations in HG's motion for a temporary restraining order and preliminary injunction. Accordingly, the complicated factual record integral to the Court's disposition of the motion counsels against certification.

Second, there is no substantial difference of opinion about whether post-termination claims brought by employers are compulsory to employment discrimination claims. As the Court has already noted, district courts across the country have ruled similarly that these counterclaims are permissive rather than compulsory. *See Healy*, 2006 WL 8433546 at *1 (collecting cases). And the Court's order has already differentiated remaining cases where special circumstances do create a logical relationship between the claims. (Order, Dkt. 30, at 11 (distinguishing *Cohan*, 2021 WL 1625098, at *4)).[5]

Nor does Andreasik dispute or introduce a substantial difference of opinion on the issue. (Mot. Reconsider, Dkt. 33, at 9–11). Instead, she points out that few cases have addressed the issue when the defendant seeks to dismiss claims filed in a second suit. (*Id.* at 11 (noting that the compulsory counterclaim question most commonly arises when courts analyze supplemental

---

[5] In some instances, courts have held that trade secret/non-compete claims are compulsory to employment discrimination claims, and Andreasik cites those cases in her original motion to dismiss. (Mot. Dismiss, Dkt. 23, at 10 n.5). But each of those cases deals with overlapping conduct between the employee's termination and the conduct at issue in the counterclaims. *See Milford Real Est. Grp., LLC v. Colburn*, No. 8:21CV412, 2022 WL 1028687, at *4 (D. Neb. Apr. 5, 2022) (noting that both claims at issue dealt with pre- and post-termination compensation); *Ferrari v. E-Rate Consulting Servs.*, 655 F. Supp. 2d 1194, 1200 (M.D. Ala. 2009) (noting that the claims "read like two versions of the same story" and that both arise from the same employment relationship in time and events*); Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 454 (D. Md. 2014) (termination was based in part on the disciplinary action at issue in counterclaim). Andreasik further cites *Keith A. Keisser Ins. Agency, Inc. v. Nationwide Mut. Ins. Co.*, 246 F. Supp. 2d 833, 836 (N.D. Ohio 2003), but this case deals with claims related to breach of contract and trade practices, not employment discrimination. In sum, the cases cited by Andreasik do not show a substantial difference of opinion. Unsurprisingly, they show that courts have reached different conclusions based on different facts. As in here, where there are no special circumstances connecting the employment discrimination claim to the post-termination conduct counterclaims, courts have uniformly declined to treat the counterclaims as compulsory. *Healy*, 2006 WL 8433546, at *1.

jurisdiction). Again, the procedural posture does not affect whether Rule 13 is satisfied, so there is no basis to believe that courts would come out differently on the question simply because Andreasik seeks dismissal as a defendant rather than as a counter-defendant.

Third, certification would not advance the ultimate termination of the litigation. Curiously, Andreasik now seeks to argue that the compulsory counterclaim question *is* jurisdictional—and that the Court should certify the ruling to avoid issuing orders on a case where it lacks jurisdiction. (*Id.* at 10). Setting aside that this runs directly into her argument that this is a 12(b)(3) or (b)(6) issue, Andreasik's motion fails because HG's claims would not be dismissed outright, but effectively transferred to the Northern District of Illinois. Certification would not hasten this litigation. It would instead serve only to delay transfer to another district court. Overall, all factors weigh against certification, and the Court will accordingly decline to certify the issue for appeal.

### C. Motion to Stay Proceedings

Finally, Andreasik asks the Court to stay proceedings pending an appeal. Given that the Court will not certify its ruling for interlocutory appeal, this question is moot. However, even if Andreasik did appeal (or file for a petition for writ of mandamus), the Court does not believe that stay is warranted. The Fifth Circuit considers the following factors in deciding whether to stay proceedings pending an appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009).

Andreasik has not shown she is likely to succeed on the merits, and her motion cites no new authority suggesting the Court's original decision on the motion to dismiss was erroneous. Second, she will not be irreparably injured because, as previously explained, Andreasik will have to litigate

HG's claims regardless of whether they continue in Texas or Illinois. Third, issuance of a stay would substantially harm HG, who has a vested interest in ensuring its non-compete agreement is enforced through the preliminary injunction currently in place. (Order, Dkt. 39). Moreover, HG's claims should promptly proceed to discovery so that the parties can examine time-sensitive issues related to Andreasik's potential spoliation. Fourth, the public interest is effectively neutral. Andreasik argues that a stay would conserve judicial resources by consolidating the two actions in one court. Even accepting this as true, the Court has already noted in its previous order why the public interest factors weigh in favor of keeping this action proceeding in Texas, such as allowing the home forum to decide harms that took place in its jurisdiction. (Order, Dkt. 30, at 13–14). Overall, no factors warrant a stay.

## IV. CONCLUSION

For these reasons, Andreasik's motion for reconsideration or request for certification, (Dkt. 33), is **DENIED**.

**SIGNED** on July 27, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE